FRANK RUSSELL, Respondent, *v.* NATIONAL EXHIBITION COMPANY, Appellant.

*Contract to play base ball — notice of suspension because the player is not in condition to play — proof of his physical incapacity — burden of proof that he played "to the very best" of his ability.*

An exhibition company employed a professional base ball player to play for it from April 1, 1896, to September 30, 1896, under a contract which provided that the exhibition company should have the right "to discipline, suspend without pay (for a definite period) or expel players for carelessness or indifference, lack of sound physical condition or such other conduct, condition or circumstance impairing their faithful and thorough performance of duties," of all of which the defendant was the exclusive judge, and that the player should "keep himself in the best physical condition to play ball at home and elsewhere during the playing season," and that "should the ability of the (player) to perform his duties be impaired, or should he become ill from natural causes at any time during the term herein prescribed," the exhibition company might "deduct from the amount then due, or to become due under this contract, such proportion of the consideration money herein prescribed as the period of his disability or impairment may bear to the term herein prescribed," and that if the player violated any of the conditions or covenants of the contract the exhibition company had "the right to terminate this contract on reasonable notice, and no further payments shall thereafter be due."

It also entered into a further agreement with the player by which, in consideration of a sum of money described as a present, the player agreed as follows: "I do hereby agree to play to the very best of my ability."

April 28, 1896, the player was suspended by the following notice: "I am obliged to lay you off without pay until you are in fit condition to play ball according to your contract." May 22, 1896, the player was finally discharged, and on June 1, 1896, he obtained other employment.

In an action brought to recover the amount due to the player under the contract up to June 1, 1896, the court refused to permit the defendant to show that the player was physically unfit to play at the time he was suspended, upon the ground that the notice of suspension did not specify "a definite period."

*Held,* that this ruling was error, as under one clause of the contract the defendant was entitled to a deduction from the amount due under the contract if the player was physically unfit to play regardless of whether it served any notice whatever.

*Semble,* that the notice of suspension fixed the duration thereof as definitely as the nature of the cause thereof would permit.

*Semble,* that under the second or further agreement the player was obliged to show that he did "play to the very best" of his ability in order to recover the payment described as a present.

APPEAL by the defendant, the National Exhibition Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of June, 1900, upon the verdict of a jury rendered by direction of the court.

The action was brought to recover a balance alleged to be due under a contract which the plaintiff's assignor, N. F. Pfeffer, entered into on October 19, 1894, to play for the defendant in the New York Base Ball Club between April 1 and September 30, 1896. Two causes of action are alleged based on separate written agreements, one providing that $2,400 was payable in equal semi-monthly installments beginning April 15, 1896, of which amount $360 was received, leaving $440 unpaid on June 1, 1896, when Pfeffer terminated the contract by joining the Chicago Base Ball Club, and the other naming the sum of $600 similarly payable, of which $90 was received, leaving, as claimed, $410 due and unpaid. The defendant alleges that nothing is payable under either instrument for the reason that Pfeffer did not keep himself in good physical condition and in consequence was suspended on April 28, 1896; and, further, that there was no consideration for the second agreement.

At the trial both agreements were put in evidence, and the first stipulates, among other conditions, that the defendant "shall have the right * * * to discipline, suspend without pay (for a definite period) or to expel" its players, and that these powers "shall include the right to discipline, suspend without pay (for a definite period) or expel players for carelessness or indifference, lack of sound physical condition or such other conduct, condition or circumstance impairing their faithful and thorough performance of duties," of all of which the defendant was the exclusive judge; that the player "expressly agrees, at all reasonable times, during the term of his employment as aforesaid, to subject himself to such rules and discipline, to keep himself in the best physical condition to play ball at home and elsewhere during the playing season;" that "it is understood and agreed that should the ability of the (player) to perform his duties be impaired or should he become ill from natural causes at any time during the term herein prescribed," the defendant might "deduct from the amount then due or to become due under this

contract, such proportion of the consideration money herein prescribed as the period of his disability or impairment may bear to the term herein prescribed;" and that if the player violated any of the conditions or covenants on his part in the contract, the defendant had "the right to terminate this contract on reasonable notice and no further payments shall thereafter be due."

The second agreement is as follows: "In consideration of a gift of six hundred ($600) dollars to be paid in twelve semi-monthly payments during the season of 1896, beginning April 1st, 1896, during the continuance of my services with the New York Base Ball Club, I do hereby agree to play to the very best of my ability in appreciation of this present, besides other considerations in my contract."

Pfeffer, by deposition taken on commission in Chicago, testified that he was to receive from the defendant $3,000, but was sent the $2,400 contract and the side contract of $600, both of which he signed and returned, and plaintiff's counsel stated that it was against the rules to contract for more than $2,400. He further testified that although in good physical condition he received no pay after April 28, 1896, having been suspended at that time by the following notice:

"NEW YORK BASE BALL CLUB,
"39 & 41 CORTLANDT ST.,
"NEW YORK, *April* 28, 1896.

"Mr. FRED PFEFFER:

"DEAR SIR.— I am obliged to lay you off without pay until you are in fit condition to play ball according to your contract.

"ARTHUR A. IRWIN, *Mgr.*"

It was admitted that no other notice than this was given before May 22, 1896, about which time Pfeffer was told that he was released and then entered into negotiations which led to his employment by the Chicago Base Ball Club on June 1, 1896.

Referring to the second agreement, the court said: "He certainly cannot recover in this action or should not be allowed to recover any part of that present, if it was a present, which accrued after he left the club and took service with another." In this view the plaintiff's counsel acquiesced. And concerning the notice of suspension the court stated: "The defendant here has limited itself as to suspen-

sion, to the right to suspend without pay for a definite period. * * * Consequently it is an attempted suspension that was void. * * * It is not necessary to go into all this discussion as to Mr. Pfeffer's condition, because, as I read the contract, if he had been a hopeless paralytic he would either have been entitled to a cancellation of the contract or suspension for a definite period and not for the period when he might recover." The defendant having excepted, the court continued : "If you will agree upon the amount due until he signed with the Chicago Club I will direct a verdict for that amount." The defendant's counsel then said : "We except to the ruling of the court that the pay is to run until the first of June. Our claim is that it should run only until the time when the man severed his connection with the New York Club by accepting an oral discharge and by hiring to another. Under the ruling of the court we agree that down to June 1st, 1896, there would be due $685, including interest."

A verdict was then directed in plaintiff's favor for $685, and it is from the judgment so entered that the defendant appeals.

*De Lancey Nicoll,* for the appellant.

*John M. Ward,* for the respondent.

O'Brien, J. :

Contracts should be fairly construed, and in considering the words used that meaning should be given which if possible will avoid an inequitable conclusion. Upon the trial the defendant sought to establish its defense that Pfeffer had violated his agreement in that he did not keep himself in good physical condition and was not physically able to play to the very best of his ability ; but all evidence directed to maintaining this defense was rendered of no avail by the ruling of the learned trial judge that it was entirely immaterial for the reason that if Pfeffer "had been a hopeless paralytic he would either have been entitled to a cancellation of the contract or suspension for a definite period and not for the period when he might recover." As the result of the construction thus given to the contract, the defense was eliminated and the defendant was prevented from showing, as for the purposes of this appeal we must hold that the testimony would have done, that Pfeffer's condition was such

that he was not only unable to play to the best of his ability, but that he was physically unable to play at all.

In several places in the contract, by different language and in express terms, the intent is clearly shown to have the good physical condition of Pfeffer made an essential and important part of the agreement. And the rights of the defendant to suspend or expel him for a failure to be and continue in good physical condition, or to deduct such proportion of his salary " as the period of his disability or impairment may bear to the term herein prescribed," are carefully guarded.   Assuming, as we must, therefore, that the defendant could show that Pfeffer was physically unfit to play, it would, it seems to us, be an unjust conclusion to reach that, because of some defect in the form of notice, all the rights which the defendant acquired under the contract were lost.

Certainly under the subsidiary contract if the defendant could show that Pfeffer was not able to " play to the very best " of his ability, it would be a hardship to compel the defendant to pay the stipulated amount ; and yet by the verdict as directed, the sum was allowed the plaintiff which Pfeffer would have been entitled to receive only upon showing a performance of the subsidiary contract on his part, which was not shown.   The inclusion of this amount without proof that Pfeffer was not entitled to it would necessarily result in a reversal of this judgment or at least in a modification. This constitutes but a small part of the recovery, and we might, were it not for our view as to the proper construction to be given the principal contract, avoid the necessity of a new trial by requiring the plaintiff to stipulate to deduct that amount from the judgment.

We think, however, that error was committed in not permitting the defendant to introduce evidence in support of its general defense of the physical infirmity of Pfeffer, for the reason that, under one clause of the contract to which we have referred, the defendant was entitled to a deduction for the period of such infirmity, and this regardless of notice since in that clause there was no requirement of notice.

It is insisted however, and this was the precise ground upon which the judge at Trial Term based his direction of a verdict, that it is evident that the defendant attempted to exercise its right under the *fourth* clause of the contract, which required the giving of a notice of suspension "for a definite period," which,

according to the construction given to these words by the learned trial judge, should have been a notice of suspension for a period of days, weeks or months. As we have pointed out, this obligation of notice is not contained in the clause which gives the defendant the right to deduct a proportionate amount of salary during the period of disability, as to which period he was not allowed to give proof by the ruling made, so that he was deprived of the rights which he had under that clause.

Upon the question also as to the sufficiency of the notice, we think that the court was in error. The 4th clause of the contract gives the defendant authority to frame rules for the government of the players and " to discipline, suspend without pay (for a definite period) or to expel " them for a number of causes specified, among which is the lack of sound physical condition. In instances where for causes such as dishonest play or open insubordination or indifference or acts impairing their faithful and thorough performance of duties, it was proposed to punish or discipline the player by taking away his pay " for a definite period," then unquestionably from the nature of the offense, it was within the power, and it was the right of the player to receive a notice of suspension for a period fixed by days or weeks and months, for that alone would be a " definite period." Where, however, the defendant sought to avail himself of the right to suspend for the lack of sound physical condition, from the nature of the cause, it is impracticable to fix upon any period measured solely by time, for this might be an injunctive both to the defendant and to the player. The object of the notice was to apprise the player, as fair dealing required, of the defendant's intention to avail itself of the rights given it by the contract, and we think the appellant's contention should be sustained that " this right to suspend the player just as long as he remains out of condition certainly makes it reasonable to suppose that the defendant might notify the player of such an intention, and thus effectuate the right. Right and remedy should correspond. Such a notice is, within the meaning of the contract, a notice of suspension ' for a definite period.' The limitation is carefully prescribed. Just as soon as the player gets back into condition the suspension is at an end."

If any other construction be given to these words as applied to suspension for lack of physical condition, then clearly it might

result in injustice to the player or to the defendant. Where the player is physically unfit to perform his duties it is necessarily impossible to determine when such disability may cease, and if the definite period prescribed would require its being fixed by a period of time, then in order to protect itself the defendant might fix the time so long that it would do injustice to the player who meanwhile might get back into condition. What the defendant was contracting for was efficient work, and the clear intent expressed by the contract was that it was not to pay for the period during which the player was unfit to perform his duties efficiently. The suggestion that, under this construction, advantage might be taken of the player to tie his hands and thus prevent his earning the money, is without force in view of the fact that such a result could not be accomplished except through bad faith, which would not succeed, for, as shown by the trial of this action, to justify the withholding of the player's salary it is incumbent upon the defendant to show that by reason of physical incapacity he was not entitled to be paid.

What undoubtedly was intended by this 4th clause of the contract was that the notice should be as definite as from the nature of the cause assigned for suspension it could be made. That is all we think the player had a right to receive, and this, under the notice served, Pfeffer obtained. Whether or not this construction, which is a reasonable one, shall eventually prevail, we think that, under the clause giving defendant the right to make a deduction for the period of disability and under the terms of the subsidiary contract requiring the plaintiff to show that the player was entitled to the additional money promised upon condition that he should play to the very best of his ability, the defendant in support of the defenses should have been allowed to introduce its evidence.

As stated, these defenses were eliminated by the ruling made, and for this error there must be a reversal of the judgment and a new trial, with costs to appellant to abide the result.

VAN BRUNT, P. J., RUMSEY, PATTERSON and INGRAHAM, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.